## CIRCUIT COURT OF CLARKE COUNTY

Berryville Lumber Co., Inc.

v.

George E. Berry
and Lucille H. Berry

October 8, 1969

By JUDGE ROBERT K. WOLTZ

The plaintiff, Berryville Lumber Company, sues George E. Berry and Lucille H. Berry jointly as makers of a note dated June 24, 1968, payable to its order thirty days after date and in the principal sum of $4,725.98. The defensive pleading sets forth that George E. Berry, trading as George E. Berry Construction Co., owed the plaintiff $4,330.00 on open account, which amount increased to that sued for as a result of plaintiff charging monthly "interest" of $1\frac{1}{2}$ percent; that the co-defendant, Lucille H. Berry, was not obligated on the open account; that both defendants signed the note as a result of representations made by an agent of the plaintiff that its purpose was merely to reduce the rate of interest and the note would not be used against them.

The evidence shows that George E. Berry had dealt with the plaintiff company since sometime in 1966, that his account became delinquent as the result of which John Friant, general manager of the plaintiff, went to the defendants' home on the date of the note, taking a note with him which he presented to them to be signed, it already having been filled out as to amount. Mr. Berry objected to that particular note but produced one on which certain provisions as to homestead exemption had been stricken.

While filling it out he asked how long it would be for and, on being informed for thirty days, said he did not know if he could pay it within that time, and Friant mentioned the possibility of renewal. Both defendants signed the note.

The principal conflict in the evidence is with regard to what led the defendants, particularly Mrs. Berry, to sign. Plaintiff's agent testified that after Berry filled out the note he had produced and altered, he signed it and asked if his wife were to sign it and was informed that she should; whereupon she asked if she were to sign and, on her husband's telling her she was supposed to sign, she did. Friant further testified that the note was then given to him and that there were no conditions expressed or agreed to at that time and that there was no condition made that the makers would not be sued, though Berry had objected to the 1½ percent service charge and was advised that the interest would be 6 percent and the service charge discontinued.

Berry testified that he knew there was a carrying charge on the account but not how much, but Friant said that if the note was signed, the carrying charge would be discontinued and the note would not be used against them; that Friant asked Mrs. Berry to sign the note which she did not wish to do and did so only after he assured her the note would not be used against them; and that the note was signed solely "to get us off the service charge." He denied that he asked his wife to sign, that Friant did. Mrs. Berry testified she knew her husband had an account with the plaintiff, that Friant came to see them on the date of the note at which time her husband agreed to sign the note he produced with a portion of it marked out, that Friant wanted her to sign in accordance with the general policy of the company and that she objected, being aware of the danger of signing jointly, but that she reluctantly signed after Friant said the note would not be used and that it would be destroyed when it was paid. She also testified that Friant said there would have to be a time mentioned in the note but said it would be renewable if her husband, who questioned his ability to pay in thirty days, could not do so within that time; that it took her a few minutes to make up her

mind but, on assurances being made, her husband did tell her to go ahead and sign.

The defendants make two principal arguments. First, they say that the note was signed and delivered on condition that it was not to be used against the makers, the only purpose being to reduce the 1½ percent monthly charges to 6 percent per annum. In short, a defense of conditional delivery is made and in support thereof is cited *Meadows v. McClaugherty*, 167 Va. 41, 187 S.E. 475 (1936). In that case, the note sued on was delivered on the express condition precedent that the note was to be ineffective until the terms of an agreement between the payee and another party could be determined. Whether such a defense is available at all depends on the status of the holder of the note, that is whether the holder is one in due course or not. While it is true that a payee may be a holder in due course, Code § 8.3-302(2), a holder in due course must not only take for value but also in good faith and "without notice . . . of any defense against . . . it on the part of any person." Section 8.3-302(1). The rights of a holder in due course are such that he takes the instrument free from "all defenses of any party to the instrument with whom the holder has not dealt" except infancy and certain other enumerated defenses. Section 8.3-305(2).

In the present case, the plaintiff dealt directly with the defendant makers and hence cannot take free from their defenses. The plaintiff is not a holder in due course, failing to establish a fact situation in which a payee may qualify as such. Under such circumstances, parol evidence as to delivery on condition or for a special purpose is admissible. Section 8.3-306.

As the defendants do not allege fraud but a conditional delivery, it is important to determine the condition on which the note was delivered. Berry was in the construction business and presumably knowledgeable in business matters. In fact, he rejected the note presented to him by the plaintiff's agent and produced a form of his own choosing with certain provisions concerning homestead exemptions crossed out. It would be utterly naive under the circumstances of this case for a businessman to give his note on condition that it not be used against him and expect another businessman to accept it on such condition. It might not be unusual for delivery to be made on condition that

a note was to have no vitality until the happening of some event or to condition delivery on some special purpose, but to deliver it on condition it would never be used is in effect no condition at all and would reduce the execution and delivery of the note to a meaningless formality or farce. Nor was the co-maker entirely innocent of business affairs, she having testified that she was aware of the dangers of signing jointly. If the note as claimed by the defendants was signed "only to get us off the service charge" and without any prospect of the note being used against them, it would likewise be naive to think that the plaintiff must go through this formality rather than simply on its own reducing or discontinuing the service charge. But further, there is evidence to show that the defendants realized that the note could and possibly would be used against them. Though Mr. Berry did not testify to it, both Friant and Mrs. Berry testified that Berry wanted to know how long the note would be for and, when told for thirty days, said he did not know whether he could pay it within that time and was then informed by Friant as to the possibilities of renewal. The evidence fails to sustain this defense put forward by the defendants.

The defensive pleading does not set up usury or failure of consideration. However, in the memorandum of law submitted, they claim that the monthly charges on the open account were usurious and that, the note being given to stop such usurious charges, the consideration for the note fails. While it may be that the charges on the open account were usurious, an agreement tainted with usury is not void, *Fischer v. Lee*, 98 Va. 159, 35 S.E. 441 (1900). Whatever the law may have been since March 1, 1968, when § 6.1-319 was amended, the open account was made prior to or not later than November, 1967. At that time, this section provided that the illegality of consideration went only "to the excess beyond the principal amount so loaned or forborne."

The defendant, George E. Berry, denies owing any money on the note but does admit owing $4,330.00 on the open account, which in effect is a denial of the accrued "service charges" or "interest" on the open account at 1½ *percent per month totalling $395.98, thereby putting that amount in issue. Unlike the provisions of the Negotiable Instruments Law, the Uniform Commercial Code no longer*

*provides that every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. See Virginia Comment to § 8.3-307.* Therefore, there is no presumption in favor of the holder, Berryville Lumber Co., Inc., that this portion of the note is supported by a valuable consideration, but the burden is upon the defendant to establish want or failure of consideration to that portion. The plaintiff introduced little evidence as to the so-called service charge other than that the plaintiff had added such charge to the principal amount. From all the evidence of the plaintiff, it appears that this charge could have been imposed unilaterally by it without prior agreement by or consent of the defendant Berry. Whatever may be the effect of recent federal "truth in lending" legislation in a situation similar to this, a creditor by unilateral action cannot impose obligations upon a debtor additional to the latter's original undertaking. Under the lack of evidence by the plaintiff regarding agreement by the defendant to pay the service charges, the defendants' burden to establish the defense of want of consideration is slight. The evidence of the defendants is that the only reason they signed the note was to be rid of such charges, from which it may be inferred reasonably that they objected thereto though Berry, as an impecunious debtor faced with the demands of his creditor, may not have flatly denied them. Though it appears he had dealt with the plaintiff over a period of approximately two years, there is no evidence that on any previous accounts with the plaintiff any carrying charges had been levied, expressly agreed to by him, or agreed to by implication either by his acceding to and paying them or otherwise.

With the account which formed the underlying basis for the note in this case, there is no evidence but that the portion consisting of service charges was added unilaterally by the plaintiff, and no evidence that the defendant ever agreed to them except as might be inferred from the fact that he signed a note, the amount of which included the account plus accrued service charges. But such note was signed in large measure as a means of avoidance of such unwanted charges and without any evidence that the defendant expressly acknowledged any agreement to pay or consideration for these charges, other than the fact of his signing the note to avoid these charges in the

future. No consideration is necessary for an instrument given in payment of or as security for an antecedent obligation, and partial failure of consideration is a defense *pro tanto*. Section 8.3-408.

With respect to the co-defendant, Mrs. Berry, she is an accommodation maker, she having signed the note for the purpose of lending her name to another party, her husband, to it, and though the plaintiff knew of her accommodation status, that would make no difference in this case since the instrument was taken for value before it was due. Section 8.3-415. Consequently, Mrs. Berry is liable to the plaintiff to the same extent that her husband is.

Based on the foregoing, judgment will be entered in favor of the plaintiff in the principal sum of $4,330.00 with interest thereon from its date June 24, 1968, 15% attorney's fee as provided in the note, and plaintiff's court costs.